and move on to the next case on the calendar. Thank you, sir. The next case is United States v. Kroytor, 24-3444. Good morning, Your Honors. Good morning. I'm Karen Radican, appearing for Appellant Uly Kroytor. Your Honor, Mr. Kroytor has been in the United States since 1995. Kagan. Counsel, if you — we're having trouble hearing you. If you could pull the microphone down a little closer, that would be great. Kroytor. Okay. Kagan. Thank you. Kroytor. The immigration consequences of criminal convictions have never been more severe. Mr. Kroytor has been in the United States since 1995. He's at this time in danger of imminent removal. I think that the law right now is — Kagan. Meaning what? That he can be removed, or is he in the process of being removed now? Kroytor. Prosecutorial discretion was granted to him. However, that can be changed at any time and under the Trump administration. Kagan. Okay. But so when you say he's under imminent removal, there's nothing actually — he's not waiting, detained, about to be removed? Kroytor. No. He's not. Sorry. But that phrase has different meanings to us these days. So we're trying to figure out what you're — that wasn't a trick question. We're just trying to figure out what you're telling us. Kagan. Right. Kroytor. So he's subject to removal now? Kagan. He's subject to removal. He has a conviction. The Trump administration has made those in enforcement — people who are here with a conviction an enforcement priority. He — at the time he entered his plea, he was — had a U.S. citizen wife. Kroytor. But there's no doubt he's removable. I mean, he committed a serious crime. He pled guilty to that crime. So now the issue is just, can he essentially seek to — I guess he wants to undo his plea so that he can try this again? Kagan. So our argument here is the district court erred in its latches analysis. Kroytor. Why? Kagan. The district court erred because it gave undue weight to the government's interest in an old conviction under circumstances where Mr. Kroytor has paid the entire restitution and served the sentence the prosecution wanted for the case. Kagan. So your argument is that the State abused its discretion? Or forgive me, that the Court abused its discretion by giving undue weight to the prior conviction? Kagan. I do believe that the Court erred in its latches analysis. I agree that the standard is abuse of discretion. Kagan. Okay. Kagan. The legal issues are reviewed de novo, and the factual issues for clear — It's a high hurdle. So we're all — you've got our attention. What's your best shot on this? Kagan. So latches is an equitable doctrine. The standard provides that if the government comes forward with prima facie evidence of a prejudice, which they did because two witnesses died, but not Beheznelian. Beheznelian was still alive. Prior counsel. Kagan. He was sentencing counsel who clearly admitted IAC. But the Court gave undue weight to the government's interest in bringing — having a conviction forever. To me, that doesn't trump or outweigh Creuter's interest in getting a remedy from this conviction under circumstances where he served the sentence the government wanted. I don't — I think that the Court gave way too much weight to the fact that the government has an interest in maintaining a conviction forever. Well, I mean, this is a very broad argument, right? I mean, it would basically suggest that anybody could come back later and have their conviction vacated under a quorum nobis petition just after the passage of time on the theory that the government's interest has waned. But I don't think the government interest can be so minimized. I mean, here there was a guilty plea. There was significant evidence of a health care fraud that Mr. Creuter seemingly got a good result in the criminal case, but not — he's not where he wants to be immigration-wise. But the logic of your argument would mean lots of convictions could just be vacated. It would have to be conviction — this was a case where there was clear IEC demonstrated by sentencing counsel. He filed — Mr. Blackman, in the first petition, filed a declaration from sentencing counsel saying, I flat-out misadvised Creuter that if you pay the restitution prior to sentencing, you will not have immigration — Well, I think he said you won't — that they won't find out about it. But then in 2007, when he's detained at the border, doesn't he know right then that advice was wrong? In other words, the other problem you've got is that there's a really very considerable delay. But Kwan comfortably allows consideration of whether a petitioner was misadvised by counsel. I think under the hypothetical that Judge Brass is sort of entertaining is that let's assume that that was ineffective advice at the get-go, and then many years go by. But when he's detained at the border, he's on notice that he got really bad advice. He was on notice that he was inadmissible. And then what? Right? He's got to show diligence. He's got to — And he immediately retained immigration counsel. And he provided in both Karmanovas petitions details about exactly what every single attorney did, and then this Court held in the first opinion that he was personally diligent. So it doesn't open it up to every conviction. It opens it up to a conviction where you can prove IEC. And what I'm really arguing here is Latches. Latches is an equitable doctrine. The district court just simply found the government made a prima facie case. The government would have prejudice in proving its conviction. That's it. But it is an equitable doctrine, but we do have a two-part test, elements for Latches. And one of it is the petitioner has to show reasonable diligence. Can you address the part after Croyder won, after we decided Croyder won, there was about a six-month delay before he files his petition. Can you address that why he delayed for about six months before filing the petition? He retained counsel about six months after the decision, and then we filed about six months later. And that was just to find counsel. He did have some medical issues, I understand, under Riedel. That doesn't matter, but he was having surgery and in the hospital. And then he retained counsel, and it was a procedurally complex case. I investigated it and filed the petition. So I submitted a declaration explaining everything I did, the immigration attorneys I spoke to, the declarations I obtained. And is it, though, an abusive discretion for the court to say the six-month delay wasn't reasonable? I mean, it might be a little bit harsh, but is that abusive discretion? I think it is abusive discretion. I think it is harsh. Is there a case law that you want to call our attention to that would be the most calibration of the standard, where we have found abusive discretion? No. The case law, frankly, is very, very severe for Karmanov's petitioners, despite the fact that it's supposed to be an extraordinary remedy, and there are people now who have convictions who can't get rid of them and are subject to permanent banishment from the United States for a conviction after they served their entire sentence. The one thing I want to point out about the Latches standard, the standard is, if the government comes forward with prima facie evidence of prejudice, the burden shifts to Mr. Croyder to show, either rebut the prejudice showing or show that he was reasonably diligent. So Croyder attacked the prejudice showing and said, you can't give paramount consideration to maintaining a conviction under these circumstances. And I think that's fundamentally where the court erred. Latches is supposed to consider the equities of all parties here. The government suffers minimal ----  So is your point that you think the court didn't consider some of the evidence or sort of the countervailing prejudice to your client? Is that your point? Yes. I think the court didn't weigh Mr. Croyder's prejudice at all. Pretty much it was the ---- So that's the difference there, and I'm trying to tease it out, but maybe I'm not asking a very precise question. I understood you originally to say that you thought that the court didn't weigh the prejudice to your client correctly, didn't give it adequate weight, and that would be different than if your argument now is that the court literally didn't consider it, because I think one would be an error of law. Which are you arguing? I believe that the court didn't consider it. What's your strongest showing? What supports that assertion, that the court did not consider the ---- Your client's equitable interests. The opinion has only one sentence where it just ---- where the court basically says Croyder argues that his interests should be weighed here and that the government's interests are minimal because he admitted guilt, he cooperated with the government, served the sentence, paid all the restitution. However, Croyder doesn't give adequate weight to the government's need for a conviction. I think that needs to be the case. It's ripe for an opinion that gives petitioners more leeway in the laches argument where their interests have to be considered, especially in a case when the consequences are so dire and there's no remedy. All right. Thank you for your patience with our questions. Do you want to reserve your last minute? Yes. All right. We'll hear from the government, please. May it please the Court. Elliot Wong on behalf of the United States. The only undisputed thing about Croyder's ineffective assistance claim here is that both attorneys whose challenge ---- whose conduct he challenges have died. All of the contemporaneous evidence about what advice they may have given him is now long destroyed, and the government now lacks any ability to retry the underlying criminal case. This is a somewhat interesting situation, Your Honors, where this is not the first quorum nobis petition that this petitioner has brought, but the second. And specifically, this is done after there's already been a finding under the first petition that Mr. Croyder had inexcusably delayed in bringing the first petition. I mean, there's also some language in Croyder 1 that seems more favorable to him also. Correct, Your Honor, and I acknowledge that. But in addition to the finding about the two-year period in which this Court examined in Croyder 1, there's additional periods of delay which this Court did not reach. And I would submit, although this Court's opinion was sympathetic to Mr. Croyder's position, it did, in fact, uphold the standard and find that there was no valid reasons in order to excuse that period of delay. To address Judge Lee's question, I think just a quick point of clarification. There's about a one-year period of time between the affirmance in Croyder 1 and the submission of the second petition in this case. And for authority on that, I would point to the Telleck case, which involved a period of delay of about a year and a half. And then in Croyder 1, there was about a two-year period. So even standing alone, a one-year period does lead to a finding of inexcusable  delay. I wasn't sure, you know, Mr. Croyder's been through a lot of lawyers, and this thing is complicated procedurally. So it seems like when we're looking at the timeline here, I'm not sure why we're picking at the last year. It's really the middle seven, arguably nine, that cause more of the problems to me. Correct, Your Honor. And we can go from starting in 2007 when Mr. Croyder indisputably knew that he was subject to removal, and in 2008 when he actually received that notice to appear in immigration court. Then we jump ahead to 2012, in which he successfully files for some form of post-conviction relief, which gives him the knowledge that he has that remedy available to him. And then in 2014, he finds out explicitly and is explicitly told that this is an aggravated felony and you need to pursue post-conviction relief to try to get this vacated. From 2014, even Mr. Croyder's citation of the Kwan case, after that period, Kwan can afford him no potential help, because at that point he's been explicitly told to seek post-conviction relief, explicitly told that this is an aggravated felony. Yeah, but I mean, didn't, at 2014, didn't he have a lawyer who unduly delayed? That was — and that seems to be purely the lawyer's fault as of 2014? Your Honor, I would dispute the characterization that it was purely the lawyer's  The record is silent with respect to what Mr. Croyder did during that period. And I'd point this Court to the Supreme Court's two decisions in Lawrence and then in Holland. And specifically in Holland, Justice Alito's concurrence opinion does go through in fairly good detail about when post-conviction counsel, whether the attorney's miscalculations can be excused from the client. And that's a high bar, specifically because there is no constitutional right to post-conviction counsel. And so there were extraordinary circumstances necessary in order to find that equitable tolling is possible in that situation. And even though those cases were habeas cases in a 2241 context, the analysis readily applies here. What about Kwan? Well, it doesn't. I don't think it does apply here. This is a snarly area, this crimmigration area. It's tough to find people who really understand it. And I don't know that the 2241 context is comparable counsel. Your Honor, I don't mean to — He's really at the mercy of what his lawyers are telling him. And his lawyers weren't giving him great advice. And they certainly weren't moving very promptly. So I think that Judge Bress's point is well taken. In that last year of delay, I don't see how the government's position changed at all. Your problem is you don't think you can retry him. But as to this middle seven-year — I think it's seven-year period, that seems to be to be more problematic. But what authorities do you have that — on this point that don't rely on 2241? Well, Your Honor, there's the entire possibility that he could have brought the current IEC claims against Mr. Grayson in the first quorum nobis petition. And it's inexcusable that he didn't at this point. So the fact that he brought the first petition, it was denied. And then he brings a second petition challenging different lawyers. And Mr. Grayson's advice is from 2003. So there's no finding of new evidence, nothing that would excuse him from not diligently pursuing his rights in the first petition. Yeah, no, I agree with you. That's the problem. But what about the Kwan case? That seems like the best case on the other side for this. So how do you distinguish that? For a couple of different reasons, Your Honor. So the Kwan case — what the holding in that case was, is that the challenge is not required to be brought at the earliest opportunity, but only requires sound reasons for not doing so. At some point between 2007 and 2021, in which Crater actually brought his second quorum nobis petition, there are any number of points where he was adequately armed with the knowledge in order to know that his conviction did carry immigration consequences and that he knew what to do in order to try to remedy that. I mean, I agree with you so far as it goes. Then the question is, why wasn't that true in Kwan? A couple of different reasons. So Kwan was explicitly instructed that he should focus on challenging his deportation. And even if that reasoning could be applied here, that would only last up against until 2014 when he was explicitly told that he needed to pursue post-conviction relief. Further, in the Kwan case, that case involved no prejudice to the government, whereas here I think the prejudice to the government is plain considering both the prejudice to respond to the petition and the prejudice to mount a retrial. What were the dates of the deaths we're talking about? As of 2014, what position was the government in vis-a-vis the witnesses? One of the witnesses had died by then. I believe it was 2011 when the first lawyer had died, and then 2021 is when the second lawyer died. Or 2020, I believe. Something around there. Further, I'd just like to address the prejudice issue a little bit. What Petitioner is doing here is he is saying that the court below did not give enough weight to his interest in the prejudice analysis, and that is not an element of the test that this court has to apply. The court is clear in telling what the prejudice is, which is prejudice on the government to respond to the petition and prejudice to mount a retrial. It's not a multi-factor analysis, and Petitioner's only case that would support that position is the Tillamook case, which they cite, which is a Lantham Act trademark case which just has no application to prejudice. I don't think she's trying to add an element. I think she's trying to persuade us that the court abused its discretion by weighing these interests improperly. Correct, Your Honor. It's a do-over, I think, is what we're being asked to do. Yes, and I apologize if I was a little bit unclear about that. What he's asking to do is do a multi-factor interest-balancing analysis for the prejudice prong here, and that's just not supported by telling, by right out. So you think what we cannot do is say the government no longer has an interest in pursuing this prosecution and Mr. Croyder's immigration interests are very strong. You think we can't, that's not the way to do this. We need to look at essentially the prejudice to the government and then his diligence? Correct, Your Honor. And specifically, I would just say that the government has an interest in finality here, and the claim that the government has no interest beyond that, given the fact that he's paid restitution, is not accurate, I think, because if he undoes the plea, at least as noted in Tellink, there's a possibility at least that he could then seek to remit the restitution or seek to undo any number of other things that flow from the conviction itself. Unless the Court has any further questions, I will submit. It doesn't appear that we do. Thank you, Counsel. First, I want to clear up an error Mr. Wong made. So in the second petition, Grayson, Behaznilian, and Blackman, those attorneys were challenged. Behaznilian is alive. Grayson and Blackman have died. But the district court just kind of disregarded that claim. That's all I have. But why wasn't Grayson part of the first quorum nobis petition? I don't know. I don't know. It could be because Mr. Blackman thought that just as a matter of fact. Do you have a record as to why that is? No. Okay. So I want to make clear, the Court found in Croyder made a factual finding that Blackman delayed because of uncertainty in the law. There was even discussion about there was no evidence of what he was doing other than that. So I think there's a factual finding that the Court should make from the first Croyder opinion. There's no other reason why Blackman delayed. That's why he delayed. You think that's a factual finding we should make or a factual finding that this Court already made? It's a factual finding the Court already made in Croyder 1. Also, I just want to note that in 2007, Mr. Croyder retained immigration counsel who advised him to adjust status through his wife. That is all set forth in the record, that he retained multiple immigration attorneys who were telling him, you have a remedy. And I think it's time and the equity supported to expand Kwan to allow where you receive serious misadvice and you're unable to bring a clear error here. As I said, this is clear error and the district court could have dealt with that issue in Besnillian. But the district court in the first petition interpreted Kwan very narrowly to mean that only if a petitioner is misadvised by counsel and also told that you don't have a post-conviction remedy. That's how the district court interpreted Kwan. Counsel, you're well over your time. I'm going to ask you to wrap up. Thank you both for your arguments. We'll take that one under advisement. Thank you.
judges: CHRISTEN, LEE, BRESS